Filed 6/3/24  P. v. Randle CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C097563 |
| Plaintiff and Respondent, | (Super. Ct. No. 21FE017828) |
| v. | |
| JULLIAN ERICK RANDLE, | |
| Defendant and Appellant. | |

A jury found defendant Jullian Erick Randle guilty of assault with a deadly weapon, kidnapping, simple assault, and making criminal threats against April N. in July 2021, and kidnapping during a carjacking, carjacking, making criminal threats, and being a felon in possession of a firearm against Manuel H. in October 2021.  The jury also found true a firearm enhancement attached to the kidnapping during a carjacking conviction, and the trial court found a prior strike allegation true.  The trial court sentenced defendant to an aggregate determinate term of 10 years for his crimes against April and 14 years to life, plus 10 years for his crimes against Manuel.

1

On appeal, defendant raises numerous instructional and sentencing errors. We agree with the parties that defendant's carjacking conviction must be reversed and otherwise affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In July 2021, April was standing on a public basketball court near her car, which pulled a pop-up camping trailer. Defendant approached her from behind and demanded she go with him; April refused. Defendant then grabbed her by the neck, covered her mouth, and dragged her in a headlock to the trailer. Once in the trailer, defendant hit her multiple times in the head and punched her in the ribs such that she could not breathe. April tried to escape, but defendant pulled her back into the trailer and continued to punch her.

Defendant kept April in the trailer for approximately four hours, during which he strangled her several times. April asked defendant if she could leave and attempted to leave the trailer several times. Each time April asked to leave, defendant told her no. Each time April attempted to physically leave, defendant prevented her departure. Toward the end of the four hours in the trailer, defendant had a knife in his hand, which he pointed at April and threatened to kill her. April admitted at trial that she was under the influence of methamphetamine at the time of the offense and during her trial testimony.

In October 2021, Manuel lost his apartment and started living in his car near where defendant lived in his trailer. One night, Manuel was sleeping in his car when defendant opened the door and pulled Manuel out. Defendant grabbed Manuel's shoulders and moved him towards defendant's trailer. While doing so, defendant told his codefendant[1] to take Manuel's car. Defendant's codefendant got in Manuel's car and

---

[1]     Defendant's codefendant is not a party to this appeal.

drove away.  Once inside defendant's trailer with Manuel, defendant started loading a gun.  Defendant pointed the gun at Manuel.  While pointing the gun at Manuel, defendant told Manuel that Manuel had to kill an elderly woman they both knew or defendant would kill him.  Manuel did not leave the trailer out of fear defendant would shoot him.

Soon after, defendant's uncle arrived.  Defendant told Manuel not to leave the trailer and then left to meet with his uncle outside.  While defendant was outside the trailer, Manuel escaped through a small window.  Defendant caught Manuel escaping, hit him with the gun, and made Manuel go back into the trailer through the window.  Once Manuel was back in the trailer, he ran out the front door and kept running away.

Defendant was found guilty of assault with a deadly weapon, kidnapping, simple assault, and making criminal threats against April.  The jury also found defendant guilty of kidnapping during a carjacking, carjacking, making criminal threats, and being a felon in possession of a firearm against Manuel.  The jury found true the allegation that defendant personally used a firearm pursuant to Penal Code[2] section 12022.53, subdivision (b) during the commission of the kidnapping during a carjacking offense. The trial court also found a prior strike allegation true.

At sentencing, defendant argued that the trial court should dismiss his firearm enhancement.  Defendant noted, among other things, that he suffered from a mental health condition and had suffered childhood trauma leaving him with a traumatic brain injury.  The trial court acknowledged defendant's argument but declined to dismiss or reduce the firearm enhancement.

For the crimes against April, the trial court sentenced defendant to a principal term of five years in prison for kidnapping, which was doubled to 10 years pursuant to the "Three Strikes" law.  The trial court further imposed, and then stayed pursuant to section

---

[2]     Further undesignated section references are to the Penal Code.

3

654, concurrent sentences for the remaining crimes. For the crimes against Manuel, the court sentenced defendant to a principal term of seven years to life in prison for kidnapping during a carjacking, which was doubled to 14 years to life pursuant to the Three Strikes law. The court sentenced defendant to an additional 10 years for the firearm enhancement attached to that conviction. The trial court also imposed, and then stayed pursuant to section 654, concurrent sentences for the remaining crimes.

Defendant appeals.

## DISCUSSION

### I

*Defendant's Conviction For Carjacking Must Be Reversed*

Defendant argues, and the People concede, that we must reverse his carjacking conviction because it was a lesser included crime of his kidnapping during a carjacking conviction. We agree.

"A defendant cannot be convicted of both a greater offense and a lesser included offense." (*People v. Ramirez* (2019) 43 Cal.App.5th 538, 546; accord, *People v. Reed* (2006) 38 Cal.4th 1224, 1227.) For his actions against Manuel, defendant was found guilty of both carjacking and kidnapping during a carjacking. The parties agree carjacking is a lesser included offense of kidnapping during a carjacking. (Accord, *People v. Montes* (2014) 58 Cal.4th 809, 898; CALCRIM No. 1204.) Defendant's conviction for carjacking therefore must be reversed as a lesser included offense of kidnapping a during carjacking.

### II

*Instructional Error Claims*

Defendant makes several challenges to the jury instructions. We review claims of instructional error de novo. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) "In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's

4

understanding of the case." (*People v. Martinez* (2010) 47 Cal.4th 911, 953.) But "instructions are not considered in isolation. Whether instructions are correct and adequate is determined by consideration of the entire charge to the jury." (*People v. Holt* (1997) 15 Cal.4th 619, 677.) And even "[i]f the charge as a whole is ambiguous, the question is whether there is a ' "reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.' " (*Middleton v. McNeil* (2004) 541 U.S. 433, 437.) "Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation." (*People v. Laskiewicz* (1986) 176 Cal.App.3d 1254, 1258.)

A

*Defendant Was Not Harmed By The Failure To Instruct That Carjacking Was*
*A Lesser Included Offense Of Kidnapping During A Carjacking*

Defendant was charged with one count of kidnapping during a carjacking and carjacking, both counts arose out of the same set of operative facts involving Manuel. The trial court instructed the jury regarding both offenses, but failed to explicitly instruct that carjacking was a lesser included crime of kidnapping during a carjacking. The trial court did instruct the jury that kidnapping was a lesser included offense of kidnapping during a carjacking. Defendant contends the trial court had a sua sponte duty to instruct the jury that carjacking was also a lesser included offense of kidnapping during a carjacking, and, in the event it found him not guilty of the greater offense, it could find him guilty of both carjacking and kidnapping. He argues he was prejudiced because it is reasonably probable that, had the jury been properly instructed, at least one juror would have believed he was guilty of carjacking and kidnapping and not guilty of kidnapping during a carjacking. We disagree defendant was prejudiced by the alleged error.

Although not precisely stated, defendant's claim appears to be a claim of *Dewberry* error. (*People v. Dewberry* (1959) 51 Cal.2d 548.) In *Dewberry*, at pages 554-555, our Supreme Court explained that "when the evidence is sufficient to support a

5

finding of guilt of both the offense charged and a lesser included offense, the jury must be instructed that if they entertain a reasonable doubt as to which offense has been committed, they must find the defendant guilty only of the lesser offense." (*Id*. at p. 555.) Many years later, our Supreme Court reiterated *Dewberry*'s holding, and stated, "[A] criminal defendant is entitled to the benefit of a jury's reasonable doubt with respect to *all* crimes with lesser degrees or related or included offenses." (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1262.)

Our Supreme Court held that a jury is adequately instructed as to the *Dewberry* principle if the trial court gives the "several generally applicable instructions governing [the] use of the reasonable doubt standard," which will have the "effect" of requiring the jury to give the defendant the benefit of "any reasonable doubt as to any lesser included or related offenses or [lesser] degrees." (*People v. Musselwhite*, *supra*, 17 Cal.4th at pp. 1262, 1263, italics omitted.) Thus, so long as the trial court gives the other relevant standard instructions, those instructions together will ensure the jury understands the reasonable doubt principle as applied to the choice between greater and lesser offenses, and there is no need to give a special instruction expressly applying the *Dewberry* principle. (*People v. Friend* (2009) 47 Cal.4th 1, 55-56; see *Musselwhite*, at p. 1263.)

To the extent the trial court committed *Dewberry* error, that error was harmless. Contrary to defendant's argument, the correct standard of harmless error review is the state law standard. *Dewberry* instructional error requires reversal only if it is reasonably probable that in the absence of the error, the result would have been more favorable to the defendant. (*Dewberry*, *supra*, 51 Cal.2d at p. 558; *People v. Crone* (1997) 54 Cal.App.4th 71, 78; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

When reading the instructions as a whole, it is not reasonably probable the jury would have convicted defendant of kidnapping and carjacking, instead of kidnapping during a carjacking, had it been explicitly told that carjacking, in addition to kidnapping, was a lesser included offense of kidnapping during a carjacking. The jury instruction for

kidnapping during a carjacking referred the jury to the instruction for carjacking as a prerequisite of convicting defendant of kidnapping during a carjacking. Further, the prosecution's argument relied on the same acts to prove carjacking and kidnapping during a carjacking. Taken together, it is likely the jury understood the carjacking offense was a lesser offense to the kidnapping during a carjacking offense, and that defendant could be convicted of carjacking even if the jury believed he was not guilty of kidnapping during a carjacking.

Moreover, the jury was instructed that if it entertained a reasonable doubt as to any offense it must find defendant not guilty of the offense and determine his guilt as to the other offenses. (CALCRIM Nos. 220, 3517.) Contrary to defendant's argument, there is no proper procedure for determining guilt for greater and lesser offenses. The jury is given wide latitude in how it determines verdicts. (CALCRIM No. 3517 ["It is up to you to decide the order in which you consider [each] crime[] and the relevant evidence"].) The instructions and verdict forms required the jury to find all elements of kidnapping during a carjacking beyond a reasonable doubt to convict defendant of that crime. (CALCRIM No. 220.) If the jury found defendant not guilty of kidnapping during a carjacking, then the jury could still find him guilty of carjacking and kidnapping. (CALCRIM Nos. 220, 1204, 1650, 3517.)

The jury's questions during deliberation do not demonstrate the jury misunderstood the instructions. The nature of the questions the jury sent to the trial court during its deliberations implicated defendant's codefendant's guilt for kidnapping during a carjacking and not defendant's guilt. The jury requested a read back of testimony pertaining to defendant's codefendant's involvement, indicating it could not reach a verdict as to the kidnapping during a carjacking charge, and then, after further deliberation, indicated it could not reach a verdict as to defendant's codefendant's guilt for the kidnapping during a carjacking offense. Indeed, after asking these questions and getting further instruction from the trial court, the jury hung as to defendant's

7

codefendant's guilt for kidnapping during a carjacking and convicted defendant's codefendant of carjacking. Accordingly, the trial court's failure to explicitly state that carjacking was a lesser included offense of kidnapping during a carjacking and to define the relationship between the offenses was harmless.

B

*Defense Counsel Was Not Ineffective For Failing To Request A Pinpoint*<br>*Instruction Regarding April's Credibility In Light Of Her Drug Use*

Defendant contends the trial court had a sua sponte duty to instruct the jury it could reject April's testimony and find she was not credible given that sua was under the influence of methamphetamine at the time of the offenses and during her testimony. In the alternative, defendant contends his attorney was ineffective for failing to ask for the same instruction. We disagree.

1

*The Trial Court Did Not Err*

As stated, the trial court had a sua sponte duty to "instruct on general principles of law relevant to the issues raised by the evidence." (*People v. Martinez*, *supra*, 47 Cal.4th at p. 953.) Here, the trial court instructed the jury with the pattern criminal jury instruction for assessing the credibility of witnesses. (CALCRIM No. 226.) Specifically, the trial court instructed that the jury may believe all or parts of a witness's testimony and, in doing so, "may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony" including, how well the witness could perceive and remember the events testified to, the witness's behavior while testifying, and the reasonableness of the testimony considering all the other evidence of the case. (See *ibid*.) Further, the pattern instruction charged the jury that it may disregard the entirety of a witness's testimony if it believed the witness deliberately lied about something significant or that the jury may disregard specific statements the jury believed to be untruthful. (*Ibid*.) This pattern instruction complied with the court's sua sponte duty to

8

instruct on general principles of law related to witness credibility and was applicable to defendant's case given the eyewitness testimony.

Defendant's contention that the trial court was required to further instruct on specific principles of law related to April's credibility and drug use is the equivalent of arguing the trial court had a duty to deliver a pinpoint instruction. (See *People v. Saille* (1991) 54 Cal.3d 1103, 1119 [a pinpoint instruction is an instruction that "relate[s] particular facts to a legal issue in the case"].) But the trial court has no sua sponte duty to deliver a pinpoint instruction. (*Ibid*.) It is instead the parties' burden to request such an instruction. (*People v. Sanders* (1995) 11 Cal.4th 475, 533.) Thus, if defendant thought the pattern instruction was inadequate to his theory of the case, then he should have requested amplification or clarification of the instruction. His failure to do so forfeits this claim on appeal. (*Ibid*.) " ' "[A] party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language." ' " (*People v. Hill* (1992) 3 Cal.4th 959, 997, overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.) The trial court is not obligated "to revise or improve accepted and correct jury instructions" without request from counsel. (*People v. Kelly* (1992) 1 Cal.4th 495, 535; see also *People v. Daya* (1994) 29 Cal.App.4th 697, 714 [the "defendant is not entitled to remain mute at trial and scream foul on appeal for the court's failure to expand, modify, and refine standardized jury instructions"].) Accordingly, the trial court did not err by failing to give an instruction regarding April's credibility in light of her drug use.

2

*Defendant's Counsel Was Not Ineffective*

In the alternative, defendant argues his counsel was ineffective for failing to request a pinpoint instruction regarding April's credibility given her drug use. We disagree.

9

" 'In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome. [Citations.]' [Citations.] If the defendant makes an insufficient showing on either component, the claim must fail. [Citation.] 'If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation. [Citation.] Otherwise, the claim is more appropriately raised in a petition for writ of habeas corpus.' [Citations.] 'A reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.' " (*People v. Palmer* (2005) 133 Cal.App.4th 1141, 1158.)

Here, it was a reasonable tactical decision for defendant's counsel to rely only on the witness credibility pattern jury instruction *because she argued extensively that April's drug use rendered her not credible*. Defendant's counsel asked multiple questions of April regarding the frequency and amount of her drug use and argued during closing argument that, because of April's drug use, she could not perceive the events of the offense accurately nor give an accurate retelling of the events. Defense counsel's argument fits within the pattern instruction and pinpointed for the jury specific facts pertaining to April that minimized her credibility in light of the pattern credibility instruction. Accordingly, defendant has not demonstrated his counsel's performance fell below an objective standard of reasonableness.

10

III

*Sentencing Claims*

Defendant argues the trial court was required to dismiss his prior strike and firearm enhancement under section 1385 and, in the alternative, abused its discretion in failing to do so. We disagree.

A

*The Trial Court Was Not Required To Dismiss*

*Defendant's Prior Strike Or Firearm Enhancement*

Section 1385, subdivision (c)(1) provides, "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so." Subdivision (c)(2) of section 1385 provides, "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." As relevant here, mitigating circumstances include that "[m]ultiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed" (§ 1385, subd. (c)(2)(B)) and that "[t]he application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed." (§ 1385, subd. (c)(2)(C).)

Defendant contends the wording of section 1385 and legislative history indicate a prior strike constitutes an enhancement for the purposes of section 1385. Defendant points to the plain meaning of the word "enhancement" used in the statute and the legislature's intent to dismiss enhancements based on convictions more than five years old (see § 1385, subd. (c)(2)(H)), which, defendant argues, would include a prior strike that is more than five years old. Not so.

11

"It is . . . well established that the Three Strikes law is not an enhancement; it is an alternative sentencing scheme for the current offense. . . . Because the statutory language is clear and unambiguous, we follow its plain meaning and do not consider the legislative history cited by defendant. . . . The plain language of subdivision (c) of section 1385 applies only to an 'enhancement,' and the Three Strikes law is not an enhancement." (*People v. Burke* (2023) 89 Cal.App.5th 237, 243; accord, *People v. Serrano* (2024) 100 Cal.App.5th 1324, 1338; *People v. Dain* (2024) 99 Cal.App.5th 399, 410, review granted May 29, 2024, S283924; *People v. Tilley* (2023) 92 Cal.App.5th 772, 776, fn. 2; *People v. Olay* (2023) 98 Cal.App.5th 60, 69.) Because a strike is not considered an enhancement, section 1385, subdivision (c) did not require the trial court to dismiss defendant's prior strike.

Similarly, section 1385, subdivision (c) did not require the trial court to dismiss defendant's firearm enhancement. Since the firearm enhancement was the only enhancement defendant was sentenced to, his case does not fall under section 1385, subdivision (c)(2)(B), which requires multiple enhancements before triggering application of the subparagraph.

Subdivision (c)(2)(C) of section 1385 does not mandate dismissal of defendant's firearm enhancement either. While the language " 'shall be dismissed' " suggests mandatory dismissal, this language must be harmonized with the entirety of the statutory framework, not viewed in isolation. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 296-297.) The appellate court in *Mendoza* considered the meaning of section 1385, subdivision (c)(2)(C) within the broader statutory context, and explained that "if the court finds that dismissal of an enhancement 'would endanger public safety,' then the court need not consider the listed mitigating circumstances. [Fn. omitted.] (§ 1385[, subd. ](c)(2).) The 'shall be dismissed' language in section 1385[, subdivision ](c)(2)(C), like the language of all of the listed mitigating circumstances, applies only if the court does *not* find that dismissal of the enhancement would endanger public safety. That

12

interpretation gives meaning to the language in section 1385[, subdivision ](c)(2) requiring the court to consider whether dismissal 'would endanger public safety,' and it consequently avoids rendering that language surplusage." (*Mendoza*, at p. 296.)

We agree with *Mendoza* and the other cases addressing this issue, which conclude that, when read as a whole, section 1385 subdivision (c)(2)(C) only applies after the court makes a discretionary public safety determination, and only if the court finds public safety would not be endangered by dismissal. (*People v. Mendoza*, *supra*, 88 Cal.App.5th at p. 296; see also *People v. Anderson* (2023) 88 Cal.App.5th 233, 240-241, review granted Apr. 19, 2023, S278786, briefing deferred; *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1098, review granted Apr. 12, 2023, S278894, briefing deferred; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 15-21; *People v. Walker* (2022) 86 Cal.App.5th 386, 396-397, review granted Mar. 22, 2023, S278309, argued and submitted.)

Here, the trial court based its sentencing decision to impose the firearm enhancement on the gratuitous violence of defendant's conduct in ordering Manuel to kill another person, recklessly wielding the firearm while forcing Manuel to remain at gunpoint in defendant's trailer, and hitting Manuel with the gun when he attempted to escape. After imposing sentence, the trial court stated it found the imposed sentence to be necessary to protect society from further violent acts on behalf of defendant. The trial court's stated reasons for imposing the firearm enhancement demonstrate its belief that to dismiss the enhancement would endanger public safety. (See *People v. Bradford* (2010) 187 Cal.App.4th 1345, 1355 ["absent a showing to the contrary, the trial court is presumed to have known and followed the applicable law"].) Given this finding, the trial court was not required to dismiss defendant's firearm enhancement.

13

B

*The Trial Court Did Not Abuse Its Discretion By Failing*

*To Dismiss Defendant's Prior Strike Or Firearm Enhancement*

In the event the trial court did not have a mandatory duty to dismiss defendant's prior strike or firearm enhancement, as we concluded, defendant asserts the trial court abused its discretion because four mitigating circumstances in section 1385, subdivision (c)(2) applied to his case. Again, we disagree.

As explained, section 1385, subdivision (c) does not apply to prior strike allegations because they result in an alternative sentencing scheme and not an enhancement. (*People v. Burke*, *supra*, 89 Cal.App.5th at p. 243.) Thus, the trial court cannot be said to have abused its discretion by failing to dismiss a prior strike under a provision that does not apply to prior strikes.

Similarly, as it applies to defendant's firearm enhancement, section 1385, subdivision (c)(2)(B) does not apply to defendant's case because he was sentenced to one enhancement. This leaves defendant's reliance on section 1385, subdivision (c)(2)(C) through (E), which acknowledge the mitigating nature of the length of a defendant's sentence and an offense's connection to mental illness and childhood trauma. Defendant argues these factors were present in his case and warranted striking of the firearm enhancement.

We review the trial court's refusal to dismiss an enhancement under section 1385 for abuse of discretion. (*Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 490.) "A trial court may abuse its discretion where 'its decision is so irrational or arbitrary that no reasonable person could agree with it,' 'where the trial court was not "aware of its discretion" ' to dismiss a sentencing allegation under section 1385, or 'where the court considered impermissible factors in declining to dismiss.' " (*Id.* at pp. 689-690.)

The trial court acknowledged defendant's mental health condition and childhood trauma, and that the imposition of the firearm enhancement would result in a term beyond

20 years.  On balance, however, the trial court found defendant's gratuitously violent use of the gun after the purpose of the underlying crime had been accomplished along with several other aggravating factors, including that his conduct indicated a danger to public safety, justified imposition of the firearm enhancement.  Because the trial court found dismissal of the firearm enhancement would endanger the public, it was not required to afford great weight to the mitigating factors it acknowledged applied to defendant.  (See *People v. Mendoza*, *supra*, 88 Cal.App.5th at p. 296 [when read as a whole, § 1385, subd. (c)(2) only applies after the court makes a discretionary public safety determination that dismissal of an enhancement would not endanger public safety].)

Given the trial court's finding defendant posed a risk to public safety and used the gun against Manuel in a gratuitously violent fashion, we cannot say the trial court abused its discretion by finding the mitigating factors under section 1385, subdivision (c)(2) failed to demonstrate the dismissal of defendant's firearm enhancement would be in the interest of justice.  Accordingly, the trial court did not abuse its discretion by failing to dismiss the firearm enhancement.

## DISPOSITION

Defendant's conviction for carjacking in count 6 is reversed.  The judgment is otherwise affirmed.

                                           /s/                         
                                             ROBIE, Acting P. J.

We concur:

 /s/                         
RENNER, J.

 /s/                         
BOULWARE EURIE, J.